2379 18 Wilson vs. United States and we'll wait for the council to come up to the front. Thank you. Okay, Mr. Silverman. Good morning, Benjamin Silverman for Rennell Wilson, who was sentenced in absentia, even while he was detained in federal custody, afforded a chance and habeas to correct its errors. The district court declined to afford fundamental rights, including advanced notice of sentencing the right to appear in person and be notified of the right to appeal. This case is controlled by then Court of Appeals Judge Marshall's opinion in United States v. Johnson, holding cognizable and remediable and habeas the failure to provide advanced notice and an in-person sentencing proceeding. These failures caused harm for four reasons. First, without advanced notice, council was not able to raise its objection based on a matter of first impression in this court to the mandatory life sentences on counts one and two, based on the combination of Mr. Wilson's age and disability at the time of the offense. Second, this court has remanded even when special conditions of supervised release are not read out loud. In this case, it's not even clear if there are conditions of supervised release, which is relevant because under the First Step Act, life sentences don't necessarily mean life without parole anymore. And it's totally unclear from the judgment. Is there restitution? Is there forfeiture? Are there conditions of supervised release attached to these counts? What are they? They were never stated in court. There's no standard form judgment. If you ask prosecutors and defense lawyers in federal court, have they ever seen anything like this? They'll tell you no. They've never seen someone sentenced on a felony without a judgment in a criminal case docketed. That's how atypical this was. Third, this court should not understate what it described in Ramirez and in Judge Walker's opinion in Agard as the important ceremonial function and dignity provided by an in-person sentencing proceeding to allow the defendant and his family and his community know that what is happening is lawful and appropriate. No one should be told by postcard that they've been sentenced to spend the rest of their life in jail, especially not someone who is already in federal custody and easy to bring to the courthouse. And fourth, Mr. Wilson wasn't notified of his right to appeal. It's not even clear if it was possible to communicate the judgment to him within 14 days. You can't get a phone call readily with a federal prisoner. Mail is slow. That's why you do these in person. And that's cause to forgive and excuse the procedural default of not raising it and the direct appeal. He wasn't notified of his right to raise. And under Soto, that alone is remediable and habeas. And it's the government's burden, which it has never tried to meet, to show that it would be harmless. The second grave error was the improper use of the concurrent sentence doctrine to deny relief even when the government conceded that a count should be dismissed. This is a doctrine that Judge Menasche's opinion and Al-Awali described as intended for judicial economy. But it does not conserve judicial resources to decline to dismiss a count when the government concedes it must be dismissed. It only creates further litigation. Further, under Clemente v. Lee, it's an abuse of discretion under most... Why does it create further litigation? Because the issue... I mean, if in fact the dismissal of one count would not affect the sentence that was imposed... We wouldn't be here litigating. So the idea of the doctrine is that if it doesn't affect the overall sentence, then it is inefficient to litigate that sentence. So why would it create further litigation? We wouldn't be here right now litigating it if the district court had done what the government consented to, which is dismissing the count. And the issue wouldn't stay alive forever, like the lesser-included, double jeopardy-violating, multiplicitous 924C count that this court declined to address in 2010, that the district court again declined to address in its opinion last September, and that just remains alive forever. So when the government is conceding to dismiss a count, the only efficient course for judicial economy is to dismiss the count. And leaving it alive is just a way of saying, I don't want to grant any relief to this person, even if lawfully appropriate. But if it were dismissed, would that change the sentence that your client is facing? If that count alone were dismissed? Yes. No, but he's unable to remedy it in the future if it would, because under Clemente v. Lee, it would be untimely. He could never raise it again in habeas. So it has to be dealt with now, or else it creates a roadblock to anything that could affect his sentence in the future. Well, what we say when we apply the concurrent sentence doctrine is that it would decline to consider it without prejudice to it being raised at a time at which it would make a difference in the sentence. But AEDPA imposes a firm jurisdictional statute of limitations that blocks it from being raised again. So if you don't raise it now, it's barred by AEDPA. So it puts him between a rock. Under Clemente, basically, cuts out all the reasoning in point three of your Honor's opinion, nulla voli, and all the reasoning in Castillo forever applying the concurrent sentence doctrine, because it makes it jurisdictionally impossible to re-raise the claim, even if appropriate, and even if it's meaningful at a later time. And finally— Actually, that's an interesting point. So if a court declines to consider it under the concurrent sentence doctrine and says we're not doing it, but we would consider it later, I mean, isn't the court essentially saying we're not giving him an opportunity to raise it now, and so then maybe the bar wouldn't apply because the court is saying it won't consider it? AEDPA's jurisdictional, and this Court made those comments in dicta in Casierno loli before Clemente held that it wouldn't be raisable. So Clemente undermines the reasoning, undermines and abrogates the dicta, and makes it an abuse of discretion to apply the discretionary doctrine under these circumstances. And the final issue is the ineffective assistance of counsel that Mr. Wilson received, both in the trial court and on appeal, in relation to his 2007 and 2016 sentencings. In 2007, there was no objection to an above-guideline sentence imposed without notice. There was essentially no sentencing advocacy. There was only an objection to an obstruction enhancement that was imposed without the necessary factual findings. Usually those would be in the PSR. There was no PSR without objection. None of this is normal. Two of the three lawyers, I understand, was their first federal trial and first federal case, and this was egregious ineffective assistance. There was also no sentencing mitigation presented, and so Judge Gariff has stated in 2007, when he imposed the sentences on the five non-capital counts, that no reasonable person could find Ronell Wilson mentally retarded. That was the language of the time on page 42 of the transcript. Nine years later, he wrote an opinion saying, this man can't be executed under Atkins v. Virginia, and that just shows how egregiously poor the sentencing advocacy was in 2007. And then, of course, in 2016, counsel did not object when there was no sentencing proceeding at all, no guidelines calculation. The PSR had been done in 2008, a year after the first sentencing at the request of the Bureau of Prisons, because the Bureau of Prisons needs these. This is egregious lapses in representation, completely out of order with ordinary federal practice. And with the Court's permission, because the government did not put in a brief, and I have really, I'm not certain what they're going to say in substance, and in detail, I request the rest of the time for rebuttal so I can address it. Okay, that's fine. We'll reserve the minute 45 for rebuttal. Thank you. Let's hear from the government. Mr. Gibaldi. Yes. Good morning, and may it please the Court. My name is Michael Gibaldi. I'm an assistant U.S. attorney in the Eastern District of New York. In 2003, Ronell Wilson murdered two New York City Police Department detectives, James Nemarin and Rodney Andrews. His guilt for these heinous crimes was never seriously in dispute. And ultimately for his crimes, he is serving seven consecutive life sentences, among other consecutive terms of imprisonment. And importantly, two of those life sentences are mandatory life sentences for the murders in aid of racketeering, counts one and two. Last year, the District Court concluded that Wilson is not entitled to habeas relief, and that conclusion is undoubtedly correct, not even debatable, such that a certificate of appealability should issue. With respect to the claim that Wilson should have received a resentencing in 2016 after the District Court vacated the five sentences of death and reimposed life sentences instead, the District Court properly concluded that any error in this regard was harmless. And that is because simply the murder counts, counts one and two, carry mandatory minimum sentences of life imprisonment. This Court has previously held on multiple occasions that such an error is subject to harmless error review. For instance, in U.S. v. Aru, or Arus, A-R-R-O-U-S, 320 F. 3rd, 355, decision of this Court from 2003, on remand the District Court held a resentencing without the defendant present. This Court said that that was error, but that it was harmless error. And it's harmless when the Court can be confident that the defendant's presence would have made no difference in the sentence handed down. This Court has reaffirmed in DeMott, 2008 opinion of this Court, Walker v. Artis, a 2017 opinion of this Court, that such a claim is subject to harmless error review. And this Court has separately held that when you're looking at a case where the District Court imposes the mandatory minimum sentence, even if there's some error in that regard, by definition it must be harmless because the defendant got the mandatory minimum. And U.S. v. Sharpley, which is a decision cited by the District Court in its opinion here, an opinion of this Court in 2005, establishes that proposition that when a defendant gets the mandatory minimum sentence, any error in regard to sentencing is harmless. The only real challenge— Well, the counsel says that a mandatory minimum life sentence would not necessarily be a life sentence because he could get some form of relief. I mean, what about that? Well, he would be subject to that— I think his argument is that— I mean, he would be—he's eligible to make a motion under the First Step Act regardless. I think what his argument is is that somehow if he had resentencing in 2016, he could have presented an argument to the District Court then that even though murder in a racketeering says that a life sentence is mandatory, it shouldn't be mandatory for people like Ronell Wilson in light of a combination of his age and intellectual disability. That claim, as my colleague on the other side concedes, is totally novel. There's no support for that claim. The Supreme Court has held in Miller v. Alabama that mandatory life sentences cannot be applied to juveniles when you commit the crime under 18 years of age. But this Court has held that that doctrine establishes a bright-line rule such that if you're over the age of 18, mandatory life sentences are appropriate and in this case, application of a mandatory life sentence is appropriate. The idea that somehow you can combine Miller v. Alabama with the separate line of cases coming from the Supreme Court's decision in Atkins about death penalty jurisprudence, there's just no support for the idea that you can combine somebody's age and their intellectual capacity. The only case I'm aware of that has considered that is the Sixth Circuit which has rejected that argument in U.S. v. Davis, a 2013 opinion of the Sixth Circuit saying that Miller and Atkins are separate lines of cases that shouldn't be combined. And I think that's really because the Atkins line of cases about intellectual disability and that it's unconstitutional to execute the intellectually disabled really comes from a separate line of cases. Death penalty jurisprudence is something that this Court has recognized repeatedly as a special area of the law given how fundamentally different the death penalty is. What about the concurrent sentence doctrine? Is the defendant barred from raising the argument again that death penalty should be vacated? No, I don't think. So I think application of the concurrent sentence doctrine here would not necessarily preclude the defendant from raising his claim in the future. Clemente v. Lee said nothing about the concurrent sentence doctrine. And in fact, I think as Your Honor was alluding to, when the Court says essentially in the interest of judicial economy, we're not going to hear that claim now because it would make no practical difference for your ultimate sentence. The claim is dismissed without prejudice in the context of a 20- But what's the judicial doctrine about whether we'll entertain it at that time? If there is a jurisdictional limit on raising it again, then we wouldn't be able to overcome that, right? Except that such claims are subject to equitable tolling. This Court in Clemente v. Lee actually has a paragraph describing equitable tolling. And I can say that on behalf of the government, if this Court were to apply the concurrent sentence doctrine in rejecting Wilson's other claims, essentially saying, look, you're serving multiple life sentences and so any of these other claims wouldn't make a difference, the government would not in the future raise that- Equitable tolling. Would not say equitable tolling does not apply. We would not object to Wilson in the future saying my claims are equitably tolled because the Court- because I have been pursuing my claims diligently and the Court just didn't let me resolve them now. We would have no issue with that. And the Court essentially has already applied the concurrent sentence doctrine in this case. In 2010, when this Court affirmed all of Wilson's convictions and just vacated the death penalty, this Court considered the argument that Count 6 was multiplicitous of Counts 7 and 8. Count 6 is a 924C firearm offense. Counts 7 and 8 are the 924J offenses for causing the death of James Nemirin and Rodney Andrews by use of a firearm. And this Court said it did not decide whether they were in fact multiplicitous of each other, but it said that any error in that regard would be harmless given the other life sentences that were imposed. And it cited another case, Rivera, which was a concurrent sentence doctrine case. So essentially this Court has already said that even if they are multiplicitous- and to be clear, Counts 7 and 8 are certainly not because each- Count 7 refers to the death of James Nemirin and Count 8 is the death of Rodney Andrews through use of a firearm. So it's really just a question of whether Count 6 is multiplicitous. But this Court's already concluded that it wouldn't make a difference and so it's rejected that claim already. And then as for Count 10, that's another 924C count that's premised on a robbery conspiracy. Counsel for Wilson is correct that we conceded that that count can no longer stand, but again it would make no practical difference given that Wilson is serving multiple life sentences, including two mandatory life sentences. I did also just want to address some of the other things that Counsel raises about some of the differences or irregularities, as he claims, in sentencing in 2007. This case was fundamentally different because it was a death penalty case and so it was subject to a different regime. He says that, for instance, there was no PSR and that that's a problem, but in fact the Federal Death Penalty Act explicitly provides that there is no PSR in such a case. So 18 U.S. Code Section 3593C provides explicitly that notwithstanding Rule 32 of the Rules of Criminal Procedure, quote, no pre-sentence report shall be prepared, end quote, in a case where we have the death penalty. And that's because in lieu of a pre-sentence report, you have an extensive evidentiary hearing. It's an extension of the trial, really, the death penalty phase of the trial, where there is all kinds of aggravating and mitigating facts that are presented to a jury. The district judge is, of course, presiding over that trial and can consider that, as Judge Garifuss said that he did at sentencing in 2007. So the idea that somehow counsel back then in 2007 did not present mitigation or sentencing advocacy is just not true if you look at the record of the penalty phase of the trial where extensive mitigation was submitted. And just more generally, the advocacy over the past more than a decade, I mean, they were fighting for his life and ultimately prevailed after successfully re-raising the argument in 2016 as to intellectual disability. And I see that my time is about up. If I may just make one point about intellectual disability, just to point out that when Judge Garifuss made that finding, I think it is important for this Court to consider in looking at his 2016 opinion at the end that he wasn't making that finding sort of for all purposes. He says at the end explicitly that he actually doubted very much whether Wilson is intellectually disabled by any clinical standard and that he was just interpreting Atkins and Hall and the Supreme Court's cases in the death penalty context, basically taking a more conservative view as to what counts as intellectually disabled for the death penalty and taking a conservative view as to who can properly be executed. He wasn't making a finding as to all purposes that Wilson is intellectually disabled, which I think matters to his claim that he somehow shouldn't even get mandatory life. The record, I don't think, supports that argument because the findings about intellectual disability were made in the context specifically of death penalty jury arguments. I think we have that argument. Thank you very much, Mr. Gervaldi. We'll turn it back to Mr. Silberman to rebuttal. Thank you. First, in Exhibit D, we explain to the district court that PSR is required when there are non-capital counts, even when there's a death sentence. In terms of Mr. Gervaldi concedes it's not novel to raise something that the Sixth Circuit has considered. We know that Atkins instructs that disability is part of the Eighth Amendment's proportionality analysis and, therefore, the question of when you have a documented case where someone was behind years at every stage of development, could barely speak at three, and first grade did not know the letters of the alphabet or the days of the week at 12, functioned like a third grader at 20 when this occurred, was not yet the same as someone over 18. It's a fact-specific inquiry. No, it has never been addressed by this court. He absolutely had a right to raise that and bring it for de novo review to this court, and you need advance notice of sentencing to do that. In terms of Judge Garifuz's opinion, it finds intellectual disability based on the case law about the Eighth Amendment analysis, and in courts we focus on the Eighth Amendment analysis, not on some separate clinical standard, which I'm not even sure what it is. I can't address some of the cases that were brought up in the government's first point because they weren't briefed and I haven't seen them. If they mattered to the court, I would request an opportunity to address them. It was the government's choice not to submit a brief here. In terms of Clemente, I think that the most important point is that Clemente, by focusing very carefully on the language and structure of Aetba, but by ignoring case law construing Aetba in other contexts, created lots of unforeseen ripple effects, which is precisely why this court should allow full merits briefing, which would be a brief approximately two and a half times as long as what I was able to submit on this motion, that would flesh out these issues, including what I think the government was getting at in its first point, which is the difference between a sentencing modification and a resentencing in DeMott. This court, per curiam, said resentencing requires in person. And as a final point, in 2007, one of my client's first lawyers, it was her first federal case, and their performance, I mean, they were very well intentioned. He was sentenced to death, even though nine years later that was found to be unconstitutional on grounds that they didn't even raise. But they were clearly ineffective with respect to the non-capital sentences. But she beseeched the court. Ms. Sharkey said that her client was a child of God who was capable of seeking redemption. And in the 17 years since then, he has proved her right. At the end of Exhibit D is the Certificate of Heroism for Protecting a Bureau of Prisons Corrections Officer. Two summers ago, at the height of anti-police sentiment, he wrote to community groups to urge kids from the projects where he grew up not to attack the police. He said that as a man, he wanted to decide on the side of what's right and that he stood with the police who were attacked. He is not entitled to be released from prison. But even though he was ordered to have been killed by now, he is still alive. He has shown that he can seek redemption. And as a living citizen, he is entitled to the dignity and rights of a citizen, including an in-person sentencing, and not just an opinion that says, okay, I have to let you live, I never want to see you again. When he's allowed to live, he's allowed to be treated like a citizen, and that's what we ask from this court and to give us a Certificate of Appealability because we believe at minimum these issues are arguable and debatable. Thank you. Okay, thank you very much, Mr. Silverman. The motion is submitted.